**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | |
|---|---|
| MICHAEL DAVIS, aka : | |
| WALI MALIK DAWUD, : | |
| : | |
| Plaintiff, : | |
| : | |
| VS. : | **1 : 12-CV-61 (WLS)** |
| : | |
| DOCTOR AYERS, *et al.*, : | |
| : | |
| Defendants. : | |

## RECOMMENDATION

Presently pending in this *pro se* prisoner action brought pursuant to 42 U.S.C. § 1983 is

Defendants Doctor Dewayne Ayers, Nurse Montgomery, and P.A. Edwards's[1] Motion to

Dismiss, wherein these Defendants contend that Plaintiff has failed to exhaust his administrative

remedies and has failed to state a claim upon which relief can be granted. (Doc. 15).

### Background

Plaintiff filed this action on April 19, 2012 alleging that Defendants were deliberately

indifferent to Plaintiff's serious medical need.   (Doc. 1).   Plaintiff states that on April 20, 2010,

while housed at Calhoun State Prison ("CSP"), he was playing a game of softball with other

inmates when a collision occurred that knocked Plaintiff unconscious and damaged his jaw.

Plaintiff maintains that he was taken to the nursing clinic, where he informed Defendant Nurse

Montgomery that his jaw was broken.   According to Plaintiff, Defendant Montgomery argued

with Plaintiff that his jaw was not broken because Plaintiff could still speak.   Plaintiff alleges that

---

[1] Plaintiff has named P.A. Edward as a defendant in this case; however, defense counsel filed a Waiver of Service and Motion to Dismiss on behalf of Defendant Larry Edwards. (Docs. 13, 15).   As both parties appear to be referring to the same Defendant, the Court will assume the correct Defendant is Defendant Larry Edwards.

Defendant Montgomery did not examine Plaintiff or treat his injuries.   Plaintiff also maintains that Defendant P.A. Edwards entered the nursing clinic, saw that Plaintiff was bleeding profusely and complaining of pain, but did not examine Plaintiff or assist Plaintiff in any manner.

Plaintiff asserts that Defendant Doctor Ayers examined Plaintiff on April 26, 2010, and by this time, Plaintiff's mouth was infected and his jaw was severely swollen.   The Complaint alleges that Defendant Ayers treated Plaintiff with an antibiotic and a mild narcotic drug, and Defendant Ayers ordered x-rays which showed Plaintiff had a slight fracture in his right jaw.   Plaintiff maintains that he was transferred to Augusta State Medical Prison, where he was diagnosed with fractures in both his right and left jaw.

## Discussion

A motion to dismiss can be granted only if Plaintiff's Complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 129 S.Ct.1937,1949 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

### *Exhaustion of Administrative Remedies*

Defendants allege that Plaintiff has failed to exhaust his administrative remedies, and thus, his Complaint should be dismissed.   (Doc. 15-1).   In regard to exhaustion of administrative remedies, the PLRA mandates that all prisoners wishing to bring suits pursuant to § 1983 based

on conditions of confinement violations must exhaust all available administrative remedies prior to filing a federal action.   The Act provides that A[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.@ 42 U.S.C. ▪ 1997e (a).

The Eleventh Circuit has held that

> deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process. First, the court looks to the factual allegations in the defendant=s motion to dismiss and those in the plaintiff=s response, and if they conflict, takes the plaintiff=s version of facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. . . . If the complaint is not subject to dismissal at the first step, where the plaintiff=s allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion.

*Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).

A review of the factual allegations in Defendants= Motion and Plaintiff=s Response reveals a conflict.   In his Response, Plaintiff states that he exhausted his administrative remedies through the final appeal. (Doc. 18).   Defendants contend that Plaintiff failed to exhaust the administrative remedies available to him regarding the claims alleged against Defendants. (Doc. 15).   Accepting Plaintiff=s allegations as true, Plaintiff=s claims are not subject to dismissal pursuant to the first step of the *Turner* analysis.   In accordance with the second step, the Court must now make specific findings in order to resolve the disputed factual issues.

Complete administrative exhaustion is a precondition to filing a lawsuit. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  AAn inmate must use all steps in the administrative process and comply with any administrative deadlines and other critical procedural rules before exhaustion is proper.@

3

*Woodford*, 548 U.S. at 89-92.   To remedy a prison complaint, Plaintiff is required to complete a three (3) step grievance process consisting of an informal grievance, a formal grievance, and an appeal.   Georgia Dep≠ of Corrections SOP IIB05-001 § VI; (Doc. 15-2, Spann Affidavit, ¶ 6; 15-2, p. 9).   Administrative remedies must be exhausted at the time the legal action is brought. *Goebert v. Lee County*, 510 F.3d 1312, 1324 (11th Cir. 2007).

Defendants contend, and support with an affidavit from the Chief Counselor at CSP, that Plaintiff did not exhaust any grievances regarding the allegations stated in the Complaint. (Doc. 15-2, Spann Affidavit).   The affidavit testimony establishes the presence of a grievance system at CSP, and that Plaintiff filed a grievance related to Defendants' deliberate indifference while housed at CSP, a copy of which Defendants have provided to the Court.   (*Id.* at ¶ 16).

On April 26, 2010, Plaintiff filed grievance number 48553 alleging that he suffered a fractured jaw, and requesting immediate emergency medical care.   (*Id.*; Doc. 15-2, p. 39).   The informal grievance was not resolved, and Plaintiff filed a formal grievance.   (Doc. 15-2, Spann Affidavit, ¶ 16; 15-2, p. 34).   The formal grievance was denied after it was determined that Plaintiff had received proper medical treatment.   (*Id.*).   Plaintiff filed an appeal to the Commissioner on September 8, 2010.   (Doc. 15-2, Spann Affidavit, ¶ 16; 15-2, p. 32).   The appeal was denied because Plaintiff "failed to follow Standard Operating Procedure by not utilizing the space provided on your grievance form."   (Doc. 15-2, p. 31; *see also* Doc. 15-2, Spann Affidavit, ¶ 16).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some ordering structure on the course of its proceedings."   *Woodford*, 548 U.S. at 90-91.   "If a

prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. *Williams v. Tanner*, 2006 WL 2699180 (S.D. Ga. Sept. 19, 2006) (citing *Woodford*, 548 U.S. 81).

Plaintiff alleges that because he filed the grievance appeal, he has exhausted his administrative remedies. (Doc. 18). Defendants maintain that, due to the fact that Plaintiff failed to *properly* exhaust his administrative remedies, Plaintiff has not exhausted his administrative remedies. (Doc. 15-1). Specifically, Plaintiff's appeal was denied because he did not utilize the space provided on the grievance form, but instead, attached a separate piece of paper outlining the basis for his appeal. (Doc. 15-2, pp. 32-33).

Defendants have provided no authority to support their claim that Plaintiff's use of an attachment instead of the space provided on the appeal form means there was no exhaustion. There does not appear to be a requirement that Plaintiff must utilize the space provided on the Grievance Appeal Form in the Standard Operating Procedures ("SOP") manual. The SOP manual states that an informal grievance must be "stated in writing in the space provided on the Informal Grievance Form." (Doc. 15-2, p. 12). The SOP has no requirement that the formal grievance or appeal be written only in the space provided. (*See id.* at pp. 13, 15). An inmate may attach one additional page to the formal grievance form, and when filing the appeal, is only required to "fill out and sign the Grievance Appeal Form[.]" (*Id.* at pp. 13, 15).

When filing his informal grievance, Plaintiff followed the SOP guidelines by stating his complaint and requesting his relief in the space provided. (*Id.* at p. 39). Both Plaintiff's formal grievance form and appeal form were signed and dated, and both of Plaintiff's one-page attachments were signed and dated. (*Id.* at pp. 32-34, 36). Plaintiff did not violate the

procedural rules outlined for filing a formal grievance or appeal when he chose to attach his statement to the grievance form.

Furthermore, Plaintiff filed his formal grievance in the same manner as his appeal, attaching the basis for his grievance on a separate piece of paper, and the formal grievance was denied <u>on the merits</u>.   Plaintiff had no reason to believe he was incorrectly filing his grievance appeal form, or that his appeal would not be decided on the merits.   The Court finds that Plaintiff followed the SOP guidelines, and properly exhausted his administrative remedies.   *See Lee v. Smith*, 2010 WL 114876 (S.D. Ga. Jan. 12, 2010) (finding the plaintiff exhausted his administrative remedies when the plaintiff's appeal was denied based on a procedural error after the formal grievance, filed with the same procedural error, was denied <u>on</u> <u>the</u> <u>merits</u>).

Plaintiff has filed an informal grievance, a formal grievance, and an appeal regarding the claims alleged against Defendants.   The Court finds that Plaintiff has exhausted the claims underlying this lawsuit, in that, he utilized the available administrative remedies to grieve the alleged offenses of Defendants.

***Failure to State a Claim***

Defendants also assert that Plaintiff has failed to state a claim of deliberate indifference to a serious medical need.  (Doc. 15-1).   A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."Fed. R. Civ. P. 8(a)(2).   "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."*Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted).   However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949.

6

While the Court must accept all the allegations contained in the Complaint as true, the Court does not have to accept a Alegal conclusion couched as a factual allegation.@ *Id.* The key to proper consideration of a motion to dismiss after *Twombly* is plausibility, as the Awell-pled allegations must nudge the claim across the line from conceivable to plausible.@ *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009). AThreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.@ *Iqbal*, 129 S.Ct. at 1949. Thus,

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are wellpleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 1950.

ADeliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.@ *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). In order to show that a prison official acted with deliberate indifference to a serious medical need, the Plaintiff must establish that there is an Aobjectively serious medical need@and the Aprison official acted with deliberate indifference to that need.@ *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

To establish the objective element, Plaintiff must show that the medical need poses a substantial risk of serious harm if left unattended. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is one that Ahas been diagnosed by a physician as mandating treatment or one that is so obvious even a lay person would easily recognize the necessity for a

7

doctor=s attention.@ *Hill v. DeKalb Reg=l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994).

To establish the subjective element, the Plaintiff must show that the prison official had A(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence.@ *Brown*, 387 F.3d at 1351.   A prison official=s subjective knowledge of a risk is a question of fact as to which the defendant Amust *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* [ ] must also draw the inference.@ *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2007) (emphasis in original) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)).

AA [defendant=s] intentional denial or delay of medical care is evidence of deliberate indifference.@ *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir 1990).   However, deliberate indifference entails more than mere negligence, and must be more than a medical judgment call or an inadvertent failure to provide medical care.   *Estelle*, 429 U.S. at 106; *Murrell v. Bennett*, 615 F.2d 306, 310 n. 4 (5th Cir. 1980).   An inmate who receives adequate medical care, but disagrees with the mode or amount of treatment has also not established deliberate indifference.   *See Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991).   Medical negligence, medical malpractice, or disagreements over the method of treatment are not sufficient to state a claim of deliberate indifference.   *Simpson v. Holder*, 200 Fed. Appx. 836, 839 (11th Cir. 2006); *see also Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (Aa simple difference in medical opinion@ does not constitute deliberate indifference).

Plaintiff has alleged that his serious medical need was a broken jaw.   (Doc. 1).   A broken jaw, with the symptoms alleged by Plaintiff, surely qualifies as a serious medical need.   Thus, to

determine if Plaintiff has sufficiently stated a claim against each Defendant, the Court will examine whether Plaintiff has alleged that each Defendant was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], *Bozeman v. Orum*, 422 F.3d at 1272, and disregarded that risk with conduct that was more than negligent.  *Brown*, 387 F.3d at 1351.

## *Defendant Ayers*

Plaintiff alleges that Defendant Ayers was deliberately indifferent to Plaintiff's serious medical needs during his treatment of Plaintiff's fractured jaw.[2]  (Doc. 1).   Plaintiff alleges that Defendant Ayers examined Plaintiff, prescribed an antibiotic and a pain medication for Plaintiff, and ordered an x-ray.  (Doc. 1, pp. 8-9).   Defendant Ayers informed Plaintiff that the x-ray indicated a slight fracture of Plaintiff's right jaw. (*Id.* at p. 9).   Plaintiff alleges that once he arrived at Augusta State Medical Prison, he was told both the left and right sides of his jaw were fractured, and thus, Plaintiff maintains that Defendant Ayers was deliberately indifferent because he failed to properly diagnose Plaintiff's injury.

As stated above, a defendant cannot be held liable under § 1983 for medical negligence or a misdiagnosis.   Plaintiff's only remaining claim against Defendant Ayers alleges that Defendant Ayers misdiagnosed Plaintiff's injury.   Plaintiff has failed to state a claim of deliberate indifference to a serious medical need against Defendant Ayers because a misdiagnosis is not actionable under § 1983.  *See Simpson v. Holder*, 200 Fed. Appx. 836, 839 (11th Cir. 2006)

---

[2] Plaintiff alleged several other claims against Defendant Ayers which were dismissed in an order filed July 23, 2012. (Doc. 9)

"[A]t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, and poor exercise of medical judgment." Accordingly, the undersigned recommends that this remaining claim against Defendant Ayers be dismissed, and Defendant Ayers be dismissed from this action.

*Defendant Montgomery*

Plaintiff maintains that Defendant Montgomery was deliberately indifferent to Plaintiff's medical needs by failing to examine Plaintiff after he arrived at the medical clinic with a bloody mouth and complaints of a broken jaw.   (Doc. 1, p. 6).   Plaintiff states that in the nursing clinic Defendant Montgomery inquired as to Plaintiff's problem, and "Plaintiff was forced to spit out a large swab of blood in his hand in order to explain" that his jaw was broken. (*Id.* at p. 4). Further, Plaintiff alleges that he was arguing with Defendant Montgomery about his jaw while his mouth was bleeding profusely, and yet Defendant Montgomery did not examine Plaintiff. Plaintiff maintains that if Defendant Montgomery would have examined Plaintiff she would have observed that he had a one inch gash in his mouth, his four right bottom teeth were crooked and leaning inward, and that he was bleeding profusely.   (*Id.* at p. 6).

Plaintiff has alleged facts which show that Defendant Montgomery failed to examine Plaintiff despite observing Plaintiff spit out a swab of blood, despite Plaintiff's complaints of a broken jaw, and despite Plaintiff bleeding profusely in front of Defendant Montgomery.   Plaintiff has alleged Defendant Montgomery was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and disregarded that risk by failing to examine Plaintiff's obvious injury.   *See Brown*, 894 F.2d at 1538 ("When prison guards ignore without explanation a prisoner's serious medical condition that is known or obvious to them, the trier of

fact may infer deliberate indifference."). As such, Plaintiff has sufficiently stated a claim that Defendant Montgomery was deliberately indifferent to Plaintiff's serious medical need.

To the extent that Plaintiff is attempting to assert that Defendant Montgomery was deliberately indifferent to a serious medical need because she believed Plaintiff would not be able to speak if his jaw was broken, this claim must fail. As explained above, there is no § 1983 liability for medical negligence, misdiagnosis, or a difference in medical opinion. *See Simpson v. Holder*, 200 Fed. Appx. at 839. Here, Plaintiff is merely alleging a difference in medical opinion or a misdiagnosis. Defendant Montgomery's opinion that Plaintiff could not speak if his jaw was broken is, at most, a misdiagnosis or possibly negligence, and thus not actionable under § 1983. Therefore, it is the recommendation of the undersigned that the claim that Defendant Montgomery was deliberately indifferent because she misdiagnosed Plaintiff's broken jaw be dismissed.

The Court, therefore, finds that the claim against Defendant Montgomery should be allowed to go forward to the extent that it is alleged that she was deliberately indifferent to Plaintiff's serious medical needs by failing to examine Plaintiff based on an observable serious risk of harm, not because she failed to diagnose his broken jaw. In fact, a deliberate indifference claim for failing to examine Plaintiff based on his alleged symptoms and complaints would have been likely stated even if Plaintiff's jaw had been later found not to be broken.

*Defendant Edwards*

Plaintiff alleges that Defendant Edwards was deliberately indifferent to Plaintiff's serious medical need because Defendant Edwards entered the nursing clinic and observed Plaintiff "sitting in the examination chair in pain with blood profusely running from Plaintiff's mouth", yet did not

11

ask Plaintiff any "material medical question[s]" or "perform any material examination" of Plaintiff. (Doc. 1, pp. 5-6). Plaintiff also maintains that Defendant Edwards failed to properly train and supervise the nurses at the medical clinic.

A supervisor cannot be liable under § 1983 for the unconstitutional acts of his subordinates on the basis of respondeat superior or vicarious liability. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). "A causal connection may be established when: 1) a 'history of widespread abuse' puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007). "Failure to train can amount to deliberate indifference when the need for more or different training is obvious, such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, and when the failure to train is likely to result in the violation of a constitutional right[.]" *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1397-98 (11th Cir. 1994).

Herein, Plaintiff has provided conclusory statements that Defendant Edwards has failed to train and supervise the nursing staff in identifying a broken jaw. (Doc. 1, p. 5). There are no allegations that Defendant Edwards has created a custom or policy resulting in deliberate

12

indifference to Plaintiff's Eighth Amendment rights, nor are there any allegations that Defendant

Edwards directed the nursing staff to act unlawfully or knew that the nursing staff was acting

unlawfully.   Furthermore, failure to train the proper way to identify a broken jaw is not likely to

result in a constitutional violation, as negligence and misdiagnosis are not actionable under §1983.

Therefore, the undersigned recommends that the claim against Defendant Edwards for failing to

train and supervise the nursing staff be dismissed.

Plaintiff has, however, alleged facts which are sufficient to show that Defendant Edwards

was aware of Plaintiff's symptoms, including bleeding profusely from his mouth and complaining

of pain, which indicated a possible risk of serious harm, and disregarded that risk.   The

Complaint alleges that Defendant Edwards observed Plaintiff in pain, "with blood profusely

running from Plaintiff's mouth", but refused to physically examine Plaintiff.   (Doc. 1, pp. 5-6,

12).   Plaintiff maintains that Defendant Edwards repeatedly turned Plaintiff "away and[/]or

deliberately refused to treat or examine Plaintiff's broken jaw."   (*Id.* at p. 8).   In viewing the

facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged Defendant

Edwards was aware of facts from which the inference could be drawn that a substantial risk of

serious harm existed, and disregarded that risk by failing to examine Plaintiff when he was

suffering from an obvious injury.   *See Brown*, 894 F.2d at 1538.   The Court, therefore, finds that

Plaintiff has sufficiently stated a claim of deliberate indifference to a serious medical need against

Defendant Edwards.

### *Qualified Immunity*

In their Motion to Dismiss, Defendants also maintain that they are entitled to qualified

immunity.   Defendants ▶are entitled to qualified immunity at this stage in the proceedings if

13

[Plaintiff=s] complaint fails to allege a violation of a clearly established constitutional right.≤@ *Santamorena v. Georgia Military College*, 147 F.3d 1337, 1340 (11th Cir. 1998) (quoting *Williams v. Alabama State Univ*., 102 F.3d 1179, 1182 (11th Cir. 1997)).

Qualified immunity Aoffers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.@ *Oliver v. Fiorino*, 586 F.3d 898, 904 (11th Cir. 2009).   AUnder the qualified immunity standard recently rearticulated by the Supreme Court in *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808 (2009), we are obliged to grant qualified immunity to a [defendant] officer unless the plaintiff can demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was clearly established at the time of the incident.@ *Id.* at 905.

AFor a constitutional right to be clearly established, its contours >must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.   This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.≤@ *Hope v. Pelzer*, 122 S. Ct. 2508, 2515 (2002) (quoting *Anderson v. Creighton*, 107 S. Ct. 3043 (1987)).   A[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances. . . Accordingly, . . . the salient question . . . is whether the state of the law [at the time of the events giving rise to the cause of action] gave [the defendants] fair warning that their [actions were] unconstitutional.@ *Id.* at 2516.

In the context of the defense of qualified immunity asserted on a 12(b)(6) motion to

14

dismiss, there must be a failure by the plaintiff to set forth a clearly established constitutional violation in order for the protection of qualified immunity to attach.   Herein, the undersigned has determined that Plaintiff has sufficiently plead a claim of deliberate difference to a serious medical need as to Defendants Montgomery and Edwards.   As the Complaint alleges a violation of a clearly established constitutional right against these two Defendants, it follows that they are not entitled to qualified immunity at this stage in the litigation.

### Conclusion

The undersigned finds that Plaintiff has exhausted the administrative remedies available to him and has sufficiently stated a claim of deliberate indifference to a serious medical need against Defendants Montgomery and Edwards.   Accordingly, it is the recommendation of the undersigned that Defendants' Motion to Dismiss be **GRANTED-in-part** and **DENIED-in-part** as follows: the Motion to Dismiss be **GRANTED** as to all claims alleged against Defendant Ayers, the claim of medical negligence against Defendant Montgomery, and the claim of supervisory liability against Defendant Edwards; and **DENIED** as to the claims against Defendants Montgomery and Edwards for deliberate indifference to a serious medical need. Thus, it is recommendation of the undersigned that the following claims remain: Deliberate indifference to a serious medical need alleged against Defendants Montgomery and Edwards based on their failure to examine and give or seek treatment for Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendation contained herein with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

***Jane Doe Nurses***

Plaintiff has also named Nurses Jane Doe 1 and Jane Doe 2 as Defendants in this action. (Doc. 1).   Plaintiff has not provided the identities of either Jane Doe 1 or Jane Doe 2.   On June 1, 2012, Plaintiff was instructed to identify and properly serve these two Defendants or risk having them dismissed.   (Doc. 8).   As of this date, almost eight (8) months after Plaintiff filed his Complaint, Plaintiff has still not identified these two Defendants, and they have not been properly served.   Accordingly, it is the recommendation of the undersigned that Defendants Nurses Jane Doe 1 and Jane Doe 2 be dismissed from this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendation contained herein with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 10th day of December, 2012.

s/ ***THOMAS Q. LANGSTAFF***
**UNITED STATES MAGISTRATE JUDGE**

llf

16